

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| Stanton Lawyer<br>*Assistant United States Attorney*<br>Stanton.Lawyer@usdoj.gov | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | DIRECT: 410-209-4936<br>MAIN: 410-209-4800<br>FAX: 410-962-0717 |

May 20, 2025

**VIA EMAIL AND ECF**

The Honorable Erin Alsan
United States Magistrate Judge
District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

  Re: *United States v. Esean Davis,* No. 25-mj-1284

Dear Judge Aslan:

  I write in advance of the detention hearing, scheduled for May 21, 2025, to provide the Court with the Government's position. Because there is a serious concern about the safety of the community, as discussed further below, the Government agrees with Pretrial Services' recommendation that Defendant Esean Davis should be detained pending trial. There is no combination of conditions that will assure the safety of the community.

## Background

  On March 8, 2025, members of the Baltimore Police Department ("BPD") attempted to locate Mr. Davis in the 1900 block of Beechwood Avenue in Baltimore, Maryland. At the time, Mr. Davis had a warrant for his arrest arising out of alleged first and second-degree assaults of his ex-girlfriend and her female acquaintance. That case has since been nolled prossed by the State of Maryland.

  The BPD detectives observed someone who matched Mr. Davis's physical description exit a black Acura TL, enter a residence, and then reenter the vehicle on the passenger side. The Acura departed shortly thereafter. As the Acura was pulling out of its parking space, the detectives observed that it did not have a front license plate as required by Maryland law. The detectives, accordingly, planned to initiate a traffic stop for that violation of Maryland law. Because the vehicle was mobile and the potential for DAVIS to be armed, the detectives requested support from BPD's aviation unit ("Foxtrot").

  With the assistance of the BPD detectives, who were in an unmarked vehicle equipped with lights and sirens, Foxtrot was able to locate the Acura as it traveled on Interstate 695. The Acura

1

exited I-695 at exit 18B and continued on Liberty Road heading west. At approximately 7:45 pm, the BPD detectives, with assistance from members of the Baltimore County Police Department ("BCPD"), attempted a traffic stop of the Acura. The Acura briefly paused, but then drove around the officer's vehicle and sped away heading westbound on Liberty Road. Foxtrot followed the Acura as it traveled up Liberty Road and turned into a residential neighborhood.

Approximately three minutes later, Mr. Davis, jumped out of the front passenger seat of the Acura as it briefly slowed down. Foxtrot's infrared video captured this moment and a handgun is visible in Mr. Davis's hand. A screen capture from that video and a closer in view of the same are immediately below.





Mr. Davis ran. When he was in the space behind two residences, he threw a firearm over the backyard fence of one home. Foxtrot's infrared camera captured a glowing object flying through the air and landing next to a fence inside the backyard of a residence. Mr. Davis continued to attempt to flee until he reached Plowline Road where he started walking and Foxtrot put its spotlight on him. At approximately 7:50 pm, the BPD detectives arrested Davis. A few moments later, members of BCPD located the firearm. At approximately 7:59 pm, a BPD Detective recovered a Glock 20, 10mm handgun, fitted with a "switch" that allows the firearm to fire as an automatic weapon. The extended magazine that was inserted into the firearm had burst open and several rounds of ammunition had spilled out. A screenshot from the Foxtrot footage showing the firearm prior to its recovery is immediately below.



Mr. Davis was transported to the Northwest District Police Station where he was given the *Miranda* advisements, signed a paper acknowledging the same, and was. During that interview, on two separate occasions, Mr. Davis stated that his mother had informed him that she had been contacted by police and told him that there was a warrant for his arrest. Mr. Davis bragged that if he had been driving his personal vehicle, he never would have gotten caught. He acknowledged seeing the unmarked BPD vehicle and stated that he also saw Foxtrot following the Acura he was in. He admitted running, falling down, and slipping while trying to flee through the neighborhood. Confirming that he was the person who fled from the Acura, he explained that that evening was the first time he had a helicopter light shining on him.

## **Legal Framework**

As is the case here, the Government may move for a defendant's pretrial detention in a case that "involves the possession or use of a firearm[.]" 18 U.S.C. § 3142(f)(1)(E).

> "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). The test is disjunctive; a finding on either ground compels the defendant's detention. *See United States v. Salerno*, 481 U.S. 739, 754-55 (1987). But, the burden of proof differs: the government must establish that a defendant is a flight risk by a preponderance of the evidence, whereas the defendant's danger to the community must be proven by clear and convincing evidence. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

*United States v. Anderson*, No. CV ELH-19-302, 2020 WL 1929440, at *2 (D. Md. Apr. 20, 2020).

When conducting its analysis, the Court "shall . . . take into account the available information concerning" four factors. 18 U.S.C. § 3142(g). These factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . [a] firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## **Analysis**

Mr. Davis is charged via Complaint with violating 18 U.S.C. § 922(g)(1), that is Possession of a Firearm and Ammunition by a Prohibited Person. His prior criminal history, including his juvenile adjudications, and the nature and circumstances of the instant offense establish that he is a danger to the community and his pretrial detention is required.

*a. Nature and Circumstances of the Offenses Charged & Nature and Seriousness of the Danger to the Community*

"[I]llegal gun possession is itself a serious offense, particularly in a city where gun violence, unfortunately, has become quotidian." *United States v. Ratchford*, No. CR SAG-20-0701, 2020 WL 3792209, at *4 (D. Md. July 7, 2020). Baltimore City, thankfully, is experiencing a reduction in gun violence. From 2023 to 2024, BPD reported a 23% percent decrease in homicides and a 34% reduction in non-fatal shootings from.[1] This reduction in gun violence is severely undermined by those individuals who carry firearms, especially those with switches on them, and casually dispose of them in an unsecure manner when attempting to flee from law enforcement.

The significant risk Mr. Davis's attempted flight posed to the community cannot be overstated. The vehicle he was in traveled approximately 3 miles in 3 minutes, for an average speed of approximately 60 mph. The portion of Liberty Road the Acura traveled on has a posted speed limit of 40 mph and the residential area has a posted speed limit of 30 mph. The vehicle's high-speed attempt to flee put everyone in the vicinity at risk. When Mr. Davis jumped out the vehicle, he did not immediately surrender to law enforcement. Instead, he kept running and attempted to dispose of a loaded machinegun in a residential neighborhood.

Moreover, when interviewed, Mr. Davis at first claimed to be sleeping during the vehicle chase and to have no control over what was happening. But later in the interview, he admitted to seeing the unmarked BPD vehicle prior to the failed traffic stop, knowing that the law enforcement vehicle was following the Acura, and to attempting to flee on foot. Mr. Davis also boasted that if he were driving his car, he would have gotten away from law enforcement. Mr. Davis also admitted to knowing that he had a warrant out for his arrest and that law enforcement was looking for him. This is not the behavior of an individual who will comply with court orders. Instead, as he has shown, he will attempt to avoid authority and possess contraband, posing a danger to the community and those closest to him.

*b. Weight of the Evidence*

The weight of the evidence in this matter is strong. The evidence of Mr. Davis's guilt includes: multiple videos from Foxtrot documenting the chase and Mr. Davis's attempts to flee on foot, his attempt to dispose of the machinegun, his eventual capture, and the recovery of the firearm. The evidence also includes Body Worn Camera footage from members of BPD and BCPD. Mr. Davis's approximately 30-minute interview, which is filled with numerous inculpating statements identifying him as the individual who fled from the Acura and tossed the machine gun, was video recorded. Forensic analysis of the firearm was performed and documented by the BPD laboratory and an agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives examined the firearm and ammunition as well.

---

[1] Baltimore Police Department, *Baltimore Police Department releases 2024 Year-End Crime Report and Key Highlights,* https://www.baltimorepolice.org/news/baltimore-police-department-releases-2024-year-end-crime-report-and-key-highlights

c. *History and Characteristics*

Mr. Davis's criminal history, although brief, clearly establishes that he is a danger to the community. He has a juvenile adjudication for Robbery with a Deadly Weapon. As an adult, he pleaded guilty to Possession of a Firearm and a controlled substance offense. Thus, each of Mr. Davis's prior offenses plus the instant offense involve a firearm. Those prior offenses did not dissuade him from carrying a firearm unlawfully. Notably, Mr. Davis has been shot and even that did not convince him to stop carrying firearms.

Mr. Davis's statements to BPD Detectives regarding the circumstances that led up to his arrest warrant and his knowledge of that warrant are insightful. Mr. Davis, in effect, offered that the arrest warrant was the product of an inebriated and vengeful ex-girlfriend. He also stated on two occasions that his mother told him that law enforcement had come to her home looking for him and that there was a warrant for his arrest. Yet, when he bailed out of the Acura, the one moment where he could have submitted to law enforcement and begun the process of clearing his name, he decided to continue to attempt to flee. He did not stop running. He did not give up. He ran and threw a handgun into an unknown backyard. Only when it became clear that he could not escape from Foxtrot did he stop running and slow down, waiting for his inevitable capture.

## Recommendation

The Government submits that there is no condition or combination of conditions that will reasonably assure the Court that Mr. Davis will not pose a danger to any other person or the community if released. The Government and Pretrial Services agree—Mr. Davis should be detained pending trial.

The Government, of course, looks forward to addressing this matter further at the detention hearing. Please let us know if you have any questions or need any additional information.

Very truly yours,

Kelly O. Hayes
United States Attorney

__/s/_____
Stanton M.B. Lawyer
Assistant United States Attorney